[No. 61054-1.    En Banc.    January 26, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES
MAURICE ALEXANDER, *Petitioner*.

*Jeff Ellis* of *Seattle-King County Public Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Timothy Bradshaw* and *Theresa Fricke, Senior Deputy Prosecuting Attorneys,* for respondent.

UTTER, J. — James M. Alexander seeks reversal of a Court of Appeals decision vacating an exceptional sentence and directing the trial court to impose a sentence within the standard range as calculated under RCW 9.94A, the Sentencing Reform Act of 1981 (SRA). We reverse the Court of Appeals decision and reinstate Alexander's exceptional sentence as calculated and imposed by the trial court.

## BACKGROUND

On June 26, 1991, James M. Alexander approached an undercover police officer, R. Ceja, on a city block in Seattle and asked if Officer Ceja wanted some "coca" (cocaine). Officer Ceja said yes and asked, "how about a viente?" ($20 worth of cocaine). Alexander led Officer Ceja to a donut shop in the area and walked around for some time before contacting Cesar Leal Villela. Officer Ceja attempted to give Villela $20 of police department buy money in exchange for cocaine, but Alexander intercepted the money. Alexander kept $5 of the intercepted buy money and gave Villela $15. In exchange for the $15, Villela gave Alexander a bindle of cocaine which Alexander then passed to Officer Ceja. The cocaine was later estimated to weigh .03 gram and to be too small to remeasure. Alexander was arrested shortly thereafter and charged with

delivery of a controlled substance in contravention of RCW 69.50.401(a)(1)(i).[1]

After a jury convicted Alexander as charged, the trial court proceeded to sentence him under the sentencing guidelines established by the SRA and codified at RCW 9.94A. Despite a minimum standard sentence of 36 months,[2] the trial court judge, the Honorable Anne Ellington, entered an exceptional sentence of 18 months. The reasons furnished by Judge Ellington for the downward departure from the standard sentence guidelines were roughly as follows: (1) the amount of controlled substance was extraordinarily small; (2) Alexander exhibited a low level of involvement or sophistication in committing the crime; and (3) Alexander's participation in the drug hierarchy was only peripheral. She also noted that the exceptional sentence furthered the SRA's concern for proportionality and just punishment.

The State appealed the sentence, arguing the amount of the controlled substance involved in the crime, Alexander's lack of sophistication in committing the crime, and the trial court's concern for proportionality did not constitute substantial and compelling reasons to depart from the standard range. The State further argued that even if those reasons constituted substantial and compelling reasons justifying a downward departure from the guidelines, the exceptional sentence imposed on the basis of these reasons was too lenient and as such was a reversible abuse of the trial court's discretion.

---

[1]RCW 69.50.401(a)(1)(i) provides: "it is unlawful for any person to . . . deliver . . . a controlled substance.

"(1) Any person who violates this subsection with respect to:

"(i) [cocaine] is guilty of a crime and upon conviction may be imprisoned for not more than ten years . . .". Villela was also charged and arrested under this provision. His conviction on that charge is not before this court.

[2]A violation of RCW 69.50.401(a)(1)(i) by delivering cocaine is considered a level 8 crime under RCW 9.94A.320. As such, the standard sentencing range for an offender with a seriousness score of "0" is 21 to 27 months. RCW 9.94A.310. Because Alexander had a seriousness score of 3 (based on an earlier violation of the Uniform Controlled Substances Act conviction), Clerk's Papers, at 12, his standard range was 36 to 48 months. RCW 9.94A.310; see also RCW 9.94A.360 (calculation of offender score).

The Court of Appeals agreed with the State on most of its claims, holding an extraordinarily small amount of a controlled substance, a trial court's concern to impose a proportionate punishment, and a trial court's concern to provide a just punishment[3] were not legally supportable reasons for downward departure from the standard sentence range. On the State's claim regarding lack of sophistication, the Court of Appeals appears to have held a "low degree of sophistication and peripheral participation in the drug hierarchy"[4] was a substantial and compelling reason for departure, but to have concluded the trial court's finding of fact on this issue to have been clearly erroneous.[5] Holding on the facts of this case that there were no substantial and compelling reasons justifying departure from the standard sentence range, the Court of Appeals reversed Alexander's exceptional sentence and remanded for resentencing within the standard range.

We granted Alexander's petition for review of the Court of Appeals decision pursuant to RAP 13.4(b). Alexander's petition presents the following issues for review:[6] (1) is an extra-

---

[3]Although the State did not specifically challenge the trial court's citation to "just punishment", the Court of Appeals considered the trial court's reference to both "proportionality" and "just punishment", determining neither such concern was a substantial and compelling reason for a sentence outside the standard range. *State v. Alexander*, 70 Wn. App. 608, 617, 854 P.2d 1105 (1993).

[4]Although the State does not appear to have specifically challenged the trial court's use of peripheral participation in the drug hierarchy as a reason for departure from the guidelines, the Court of Appeals nevertheless reached the issue whether this fact indeed constitutes a substantial and compelling reason for departure.

[5]While the court states in an earlier part of the opinion that it will accept as a verity that Alexander did indeed have low sophistication and a very low position in the drug hierarchy, *State v. Alexander, supra* at 612, it later contradicts this position by appearing to conduct a factual examination, *see State v. Alexander, supra* at 620 (concluding Alexander had a predisposition and had greater than minimal involvement).

[6]Alexander does not challenge the Court of Appeals determination that the trial court's concern for proportionality and concern for just punishment are not substantial and compelling reasons. Although the State raises this issue in its Supplemental Brief by Respondent, it is not entitled to seek review of the issue by this court since it prevailed on this issue before the Court of Appeals. RAP 3.1 (only an aggrieved party may seek review).

ordinarily small amount of controlled substance a substantial and compelling reason for downward departure from the standard sentence guideline? (2) is a person's low level of involvement or sophistication in executing a crime a substantial and compelling reason for downward departure from the standard sentence guideline? and, (3) is a person's peripheral participation in the drug hierarchy a substantial and compelling reason for downward departure from the standard sentence guideline?[7]

## ANALYSIS

Sentences must generally fall within the standard sentence range established by the SRA. RCW 9.94A.120(1). There are three exceptions to this general rule. Two concern first-time and sexual offenders respectively and are not applicable in this case.[8] This case involves a third exception which provides:

> The court may impose a sentence outside the standard sentence range for that offense if it finds, considering the purpose of this chapter, that there are *substantial and compelling reasons justifying an exceptional sentence.*

(Italics ours.) RCW 9.94A.120(2). In reviewing a challenge to an exceptional sentence imposed pursuant to RCW 9.94A.120(2), this court applies a three-prong test.[9]

## I

### FACTUAL DETERMINATIONS ARE TREATED AS VERITIES ON APPEAL

■ First, we examine whether the record supports the findings of fact used to justify the exceptional sentence.

---

[7]The trial court treated the second and third issues as a single reason for departure, as did the Court of Appeals. However, for purposes of clarity and precision, we treat the trial court's "single" reason of "low degree of sophistication and peripheral participation" as two separate reasons.

[8]*See* RCW 9.94A.120(5), (7)(a).

[9]RCW 9.94A.210(4) provides: "To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient."

RCW 9.94A.210(4)(a). Appellate courts ordinarily review a finding of fact to see whether the finding is "clearly erroneous". *State v. Estrella*, 115 Wn.2d 350, 355, 798 P.2d 289 (1990) (citing *State v. Pennington*, 112 Wn.2d 606, 608, 772 P.2d 1009 (1989)). However, because the State did not properly contest the findings that the crime involved an "extraordinarily small amount" of cocaine, that Alexander's crime reflected a low degree of involvement or sophistication, or that Alexander had only "peripheral participation in the drug hierarchy",[10] we treat such facts as verities on appeal. *Morris v. Woodside*, 101 Wn.2d 812, 815, 682 P.2d 905 (1984) (because State failed to provide verbatim report of proceedings which constituted evidence relevant to the disputed findings of fact, Court of Appeals would consider factual findings to be verities on appeal); *see also State v. Alexander*, 70 Wn. App. 608, 612, 854 P.2d 1105 (1993) (citing *Morris v. Woodside*, 101 Wn.2d 812, 815, 682 P.2d 905 (1984)).[11]

## II
## Downward Departure From Standard Range Is Legally Justified

Second, we examine whether each factual finding constitutes a "substantial and compelling" reason for departing from the standard range as a matter of law. RCW 9.94A.210(4)(a); RCW 9.94A.120(2); *State v. Allert*, 117 Wn.2d 156, 168, 815 P.2d 752 (1991). We conclude the first two reasons (an extraordinarily small amount of a controlled substance; and a defendant's low level of involvement in committing the crime) may each be properly advanced by a trial court as a substantial and compelling reason for departure, but the third (a defendant's peripheral participation in the drug hierarchy) may not.

---

[10]Clerk's Papers, at 20.

[11]The State has attempted to correct this deficiency through an unchallenged motion to supplement the record which was granted by the Commissioner of our court. However, because the Court of Appeals treated the findings as verities on appeal, we decline to review these challenges. *State v. Laviollette*, 118 Wn.2d 670, 826 P.2d 684 (1992) (Supreme Court will not generally consider issues that an aggrieved party failed to raise before the Court of Appeals).

In an effort to assist trial courts, which make the initial determination whether a factual finding may support downward departure from the standard sentence range, the Legislature has provided in RCW 9.94A.390(1) a list of expressly nonexclusive factors justifying downward departures. Because none of the statutorily defined reasons identified as legitimate reasons for downward departure by RCW 9.94A.390 is at issue in this case, we must determine judicially whether the reasons justify departure.

■ The trial court held that because RCW 9.94A.390(2) permits exceptional sentences upward for crimes involving quantities of drugs substantially greater than for personal use, a high degree of sophistication, or a defendant in a high position in the drug hierarchy, then "[b]y logical corollary" a very small amount of drugs, a low degree of involvement or sophistication, and a defendant's very low position in the drug hierarchy are justifications for a sentence below the standard range.[12] We agree with the Court of Appeals which rejected this reasoning on the ground "[t]he lack of an aggravating circumstance does not create a mitigating circumstance". *Alexander*, 70 Wn. App. at 613 (citing *State v. Armstrong*, 106 Wn.2d 547, 551, 723 P.2d 1111 (1986)). However, it is nevertheless possible that another theory supports treatment of the three reasons under review as substantial and compelling reasons for departure. *See* RCW 9.94A.390 (statutory list of mitigating circumstances is illustrative only and not exclusive).

■ All of the reasons currently under review are related to the execution of the crime itself.[13] The Legislature's recognition that "not all exceptional fact patterns can be anticipated" informs our inquiry as to whether a fact which is specific to the commission of a crime may constitute a judi-

---

[12]Clerk's Papers, at 15.

[13]Our task here is not to identify all factors which may constitute substantial and compelling reasons for departure. Rather, our inquiry is limited to whether each of the three reasons currently under scrutiny is a substantial and compelling reason for departure which a trial court in its discretion may rely upon to order a sentence below the range. We therefore do not here pass on the proper

cially recognized "substantial and compelling" reason for departure from the standard range. *State v. McAlpin*, 108 Wn.2d 458, 465, 740 P.2d 824 (1987) (citing Washington Sentencing Guidelines Comm'n, *Implementation Manual* § 9.94A.390 cmt. (1984)). As one commentator has suggested, "while factors which truly distinguish the crime from others of the same statutory category may justify an exception, those which are inherent in that class of crimes and do not distinguish the defendant's behavior from that inherent in all crimes of that classification may not". David Boerner, *Sentencing in Washington* § 9.6, at 9-13 (1985). Accordingly, in determining whether a factor legally supports departure from the standard sentence range, we employ a 2-part test:

> First, a trial court may not base an exceptional sentence on factors necessarily considered by the Legislature in establishing the standard sentence range. Second, the asserted aggravating factor must be sufficiently substantial and compelling to distinguish the crime in question from others in the same category.

*State v. Smith*, 123 Wn.2d 51, 57, 864 P.2d 1371 (1993) (quoting *State v. Grewe*, 117 Wn.2d 211, 215-16, 813 P.2d 1238 (1991)).[14]

We examine in turn whether each of the three challenged reasons may be provided by a trial court as a legitimate justification for a downward departure from the standard sentence range under the framework just elaborated.

---

test for determining whether a fact not directly related to the commission of the crime, *e.g.*, a defendant's background or attitude toward the crime, constitutes a substantial and compelling judicial reason for departure from the standard range.

[14]For the principle that departure is not appropriate if the Legislature has already contemplated the reason in establishing the standard range, *see also State v. McAlpin*, 108 Wn.2d 458, 463, 740 P.2d 824 (1987); *State v. Nordby*, 106 Wn.2d 514, 518, 723 P.2d 1117 (1986). For the principle that an established fact may be used by a trial court as a "substantial and compelling" reason for departure from the standard sentencing range only when the circumstances of the crime committed by the defendant distinguish the crime from the other crimes in the same statutory class, *see also State v. Gaines*, 122 Wn.2d 502, 859 P.2d 36 (1993); *State v. Estrella*, 115 Wn.2d 350, 359, 798 P.2d 289 (1990); *State v. Pennington*, 112 Wn.2d 606, 610, 772 P.2d 1009 (1989).

## A
### "Extraordinarily Small Amount" of a Controlled Substance

We first examine the trial court's reliance on the fact Alexander's crime involved only an "extraordinarily small amount" of cocaine as a reason for departure from the standard range and conclude this reliance is permissible.

With respect to the first portion of the *Grewe* test, which directs us to question whether the Legislature necessarily considered the factor in establishing the standard sentence range, we note the Legislature did not necessarily contemplate the inclusion of all amounts of controlled substances, even extraordinarily small amounts, in establishing the standard sentence range for a violation of RCW 69.50.401(a)(1)(i). Whether the Legislature necessarily contemplated the inclusion of a factor in establishing the standard sentence range depends both on whether the factor is an element of the crime of which the defendant has been convicted,[15] and on whether the factor is considered in the computation of a defendant's standard sentence range under RCW 9.94A.370(1).[16]

Although the Legislature defined violations of RCW 69.50.401(a)(1)(i)(A) to include crimes involving less than 2 kilograms of a drug, it did not establish a minimum amount for which a defendant could be prosecuted. Where the Legislature has defined a range only by reference to one end of a range, we do not generally consider it to have contemplated the particular features of crimes which may occur at the undefined end of the range.[17] We therefore conclude the Legisla-

---

[15]*See State v. Nordby*, 106 Wn.2d 514, 723 P.2d 1117 (1986) (because the infliction of "serious bodily injury" is an element of vehicular assault under RCW 46.61.522(1)(a), a victim's serious bodily injuries cannot be considered a substantial and compelling reason for departure from the standard range).

[16]*See State v. Pascal*, 108 Wn.2d 125, 736 P.2d 1065 (1987) (because a person's criminal history is a component used to compute the standard sentence range, criminal history has already been considered by the Legislature and cannot constitute a substantial and compelling reason for departure).

[17]*See State v. Fisher*, 108 Wn.2d 419, 424, 739 P.2d 683 (1987) ("While the Legislature might have reasoned that victims less than 14 years old were more vulnerable in general than those 14 or older, it could not have considered the particular

ture did not intend to mandate that the standard sentence range uniformly govern all crimes in the 0- to 2-kilogram range. Accepting as a verity for the purposes of this case that .00003 kilogram is an "extraordinarily small amount" of cocaine, we conclude the amount involved in Alexander's crime is not an element of the crime defined by RCW 69.50.401(a)(1)(i)(A). In addition, the precise amount of a controlled substance within the range of 0 to 2 kilograms is not considered in the computation of a person's offender score. *See* RCW 9.94A.370(1). Because the Legislature did not necessarily consider extraordinarily small amounts of cocaine in establishing the standard range, this factor satisfies the first part of the *Grewe* test.

With respect to the second part of the *Grewe* analysis, which directs that we consider whether the factor distinguishes the crime from other crimes of the same statutory class, we note that the delivery of an "extraordinarily small amount" of a controlled substance is a factor present in Alexander's violation of RCW 69.50.401(a)(1)(i)(A) but certainly not inherent in all crimes which are part of the class of crimes defined by RCW 69.50.401(a)(1)(i)(A). An extraordinarily small amount of controlled substance therefore distinguishes Alexander's crime from others in the same category, and meets the second requirement of the *Grewe* test.

We thus reverse the Court of Appeals and conclude that a trial court may treat an "extraordinarily small amount" of a controlled substance as a substantial and compelling reason for downward departure from the standard sentence range.[18] In so doing, we permit sentencing judges to distinguish between crimes typical of a defined class and those which are truly distinguishable as "extraordinary". By permitting judges to tailor the sentence in this manner, we also promote

---

vulnerabilities of specific individuals [in the 0 to 14 range]"); *State v. Tinkham*, 74 Wn. App. 102, 871 P.2d 1127 (1994) (Legislature's treatment of all children less than 12 years of age as the same for purposes of the first degree rape of a child statute does not reflect its consideration of specific ages within the 0 to 12 range).

[18]As noted above, we do not reach the question whether .03 gram is in fact an "extraordinarily small" amount of a controlled substance since we treat this finding as a verity on appeal.

proportionality between the punishment and the seriousness of the offense and respect for the law. *See* RCW 9.94A.010.

The State disagrees with our holding, contending that because Alexander's conduct falls within the definition of the crime defined by RCW 69.50.401(a)(1)(i)(A), he must be sentenced within the standard sentence range.[19] However, the State misapprehends the proper focus of the inquiry under RCW 9.94A.210(4)(a) and RCW 9.94A.120(2). The issue in this case is not whether Alexander was properly convicted, but rather whether an "extraordinarily small amount" of cocaine may be offered as a substantial and compelling reason for departing from the standard sentence range.

■ The State's interpretation would eliminate the ability of courts to ever impose departure since the issue of departure from the standard sentence range by definition only arises once a defendant has committed a crime. This interpretation would contravene RCW 9.94A.120(2) which expressly permits for departure from the standard range, notwithstanding the fact a defendant has been properly convicted of a crime. Because we will not construe a statute so as to render portions of it superfluous, *Cossel v. Skagit Cy.*, 119 Wn.2d 434, 834 P.2d 609 (1992), and based on the other reasons just discussed, we conclude the trial court may treat an extraordinarily small amount of a controlled substance as a substantial and compelling reason for imposing a sentence below the standard range.

## B

### Defendant's Low Level of Sophistication in Committing Crime

■ We next consider whether the trial court properly considered Alexander's low level of sophistication in committing

---

[19]The State argues: "RCW 69.50.401(a)(1)(i) clearly does not specify a requisite amount of controlled substance for any element of the offense; to assume otherwise is to ignore the plain language of the statute. . . . The legislative intent, by the plain language of RCW 69.50.401(a)(1)(i), is to criminalize all deliveries of certain controlled substances, regardless of amount", Supplemental Br. of Resp't State of Wash., at 6, and "Defendant Alexander's criminal conduct as described in the trial court's findings of fact absolutely fits the statutory definition for delivery of cocaine", Supplemental Br. of Resp't State of Wash., at 8.

the crime to be a substantial and compelling reason for downward departure from the standard sentence range. The term "low level of sophistication" is too indeterminate[20] to be analytically useful. On the record before us, however, it is clear the trial court's use of this term reflected its finding the defendant's involvement in the transaction was very minor. Applying the 2-part *Grewe* test, we find that the defendant's low level of involvement is indeed a substantial and compelling reason justifying departure from the standard sentence range.

First, the Legislature has not already necessarily considered the specific gradations in the defendant's level of involvement in establishing the standard sentence for violation of RCW 69.50.401(a)(1)(i)(A). In contrast to the reasons considered by this court in *Pascal* and *Nordby*, the level of involvement is neither a statutory element of the crime defined by RCW 69.50.401(a)(1)(i)(A) nor an element considered in computing the standard sentence range under RCW 9.94A.370(1).

In addition, we find that, as with the amount of controlled substance delivered, a low level of involvement exhibited in committing a crime is not a characteristic inherent in all crimes defined by RCW 69.50.401(a)(1)(i)(A). Alexander's low level of involvement in committing the crime thus distinguishes his crime from other crimes of the same statutory class.

Because this reason satisfies both elements of the *Grewe* test, we conclude a defendant's low level of involvement in committing a crime may in some instances justify a departure from the standard sentence range under RCW 9.94A.120(2).[21]

---

[20]This may account for the Court of Appeals association of "low degree of sophistication" with a lack of predisposition to commit the crime. Because the court made this association, it is unclear whether it answered the question whether a low degree of involvement or sophistication is a substantial and compelling reason for a departure downward.

[21]We again note that because we treat the finding that Alexander's crime reflected a low level of involvement as a verity on appeal, we do not reach the issue whether actions such as those of Alexander in fact reflect a low level of involvement.

Once a valid mitigating factor is identified by the trial court, the purposes section of RCW 9.94A.010 may properly be considered by the court in fashioning an appropriate sentence.[22] The trial court in this case did precisely that, indicating that given the mitigating circumstance attending the crime, the SRA's concern with proportionality and just punishment would be better served by a sentence below the standard range. See J. and Sentence, at 2.

## C

### Defendant's Peripheral Participation in Drug Hierarchy

■ Finally, we address the trial court's use of Alexander's peripheral participation in the drug hierarchy as a reason for downward departure from the standard sentence.[23] We conclude a defendant's status in the drug hierarchy does not constitute a substantial and compelling reason justifying departure from the standard range.

First, by defining several different types of drug crimes under different statutory provisions, the Legislature has already considered different classes of drug crimes, punishing those with greater participation in the drug hierarchy more severely than those with less involvement in the hierarchy.[24] Therefore, permitting a defendant's "peripheral participation in the drug hierarchy" to constitute a substantial

---

[22]For the reasons set forth in that opinion, we agree with the portion of *State v. Alexander*, 70 Wn. App. 608, 616, 854 P.2d 1105 (1993), which holds that the purposes of the Sentencing Reform Act of 1981 enumerated in RCW 9.94A.010 are not in and of themselves mitigating circumstances. Rather, they may provide support for the imposition of an exceptional sentence once a mitigating circumstance has been identified by the trial court.

[23]Again, we treat as a verity the finding that Alexander's crime reflects only peripheral participation in the drug hierarchy.

[24]*See, e.g.*, RCW 69.50.401(a)(1) (i) (monetary punishments may be imposed in a graduated fashion depending on amount of substance manufactured, delivered, or possessed with intent to manufacture or deliver; maximum term of imprisonment is 10 years); RCW 69.50.401(d) (maximum term of imprisonment for possession of a controlled substance is 5 years); RCW 9.94A.390(2)(d)(iv) (upward departure from standard sentence range permitted if offender occupied a high position in the drug distribution hierarchy).

and compelling reason for downward departure under RCW 9.94A.120(2) would contravene the principle that factors already considered by the Legislature in establishing the definition of a crime and the standard sentence range for that crime will not be considered in determining whether a fact constitutes a substantial and compelling reason for departure from the standard sentence range. We do not reach the second element of the *Grewe* test since this reason fails the first step and therefore cannot be offered by a trial court as a substantial and compelling reason for departure.[25]

We thus conclude peripheral participation in the drug hierarchy is not a substantial and compelling reason justifying departure, and reverse the trial court on this issue.

## III

### ALEXANDER'S SENTENCE IS NOT CLEARLY TOO LENIENT

■ ■ When the question is properly raised, the final step of the 3-part statutory analysis leads us to examine whether the resulting exceptional sentence is "clearly too lenient". RCW 9.94A.210(4)(b). A sentence will be deemed clearly too lenient only if the trial court abused its discretion in establishing the precise length of the sentence.[26] An abuse of discretion exists only where no reasonable person would take the position adopted by the trial court. *State v. Nelson*, 108 Wn.2d 491, 504-05, 740 P.2d 835 (1987).

---

[25]We note that the Court of Appeals appears to have equated the phrase "peripheral participation in the drug hierarchy" with a low level of involvement in the crime committed. Although minimal involvement in a given crime as compared to other actors committing the same crime is a substantial and compelling reason for imposing an exceptional sentence, *State v. Nelson*, 108 Wn.2d 491, 740 P.2d 835 (1987); *State v. Moore*, 73 Wn. App. 789, 871 P.2d 642 (1994), the focus of the "minimal involvement" or "secondary role" inquiry is on the defendant's role in the crime vis-a-vis other parties participating in the *same* crime. The focus is *not* the severity of the defendant's crime relative to those committing *other* crimes. Comparing Alexander's crime to an enormous number of other crimes in which other members of the "drug hierarchy" engage usurps the Legislature's role by imposing a judicially created sentencing scheme.

[26]*State v. Nelson*, 108 Wn.2d 491, 504, 740 P.2d 835 (1987); *State v. Pascal*, 108 Wn.2d 125, 138, 736 P.2d 1065 (1987).

Because the Court of Appeals held as a matter of law that three of the four reasons it reviewed were insufficient as a matter of law to constitute a substantial and compelling reason for departure and that the fourth reason was not factually supported, departure of any degree was inappropriate, and it was not necessary for the Court of Appeals to reach the State's claim the sentence was clearly too lenient. For the reasons set forth above, however, we consider two of the reasons to be substantial and compelling reasons for departure from the standard sentence range. An exceptional sentence downward therefore is permissible, and we must engage the final inquiry of the 3-part analysis to determine whether the exceptional sentence of 1 1/2 years is "clearly too lenient".

In addition to a fine of $2,250.75, Alexander has been sentenced to serve 1 1/2 years of his life in prison for the low level of involvement in the nonviolent delivery to a willing customer an amount of a controlled substance deemed to be "extraordinarily small". Moreover, had Alexander been instead convicted under the "burn" statute for delivering "no amount", RCW 69.50.401(c),[27] rather than an "extraordinarily small amount", he would have faced a maximum standard term of 1 year. RCW 9.94A.310; RCW 9.94A.320. The difference between "no" controlled substance and an "extraordinarily small amount" of controlled substance has resulted in an additional 6 months of prison. We cannot say that no reasonable person would impose a sentence of 18 months for Alexander's crime.[28] Because we do not deem his

---

[27]RCW 69.50.401(c) provides:

"It is unlawful . . . for any person to offer, arrange, or negotiate for the sale, gift, delivery, dispensing, distribution, or administration of a controlled substance to any person and then sell, give, deliver, dispense, distribute, or administer to that person any other liquid, substance, or material in lieu of such controlled substance. . . ."

[28]In other contexts, an "abuse of discretion" has been considered to have occurred when the discretion is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons". *See, e.g., In re G.V.*, 124 Wn.2d 288, 295, 877 P.2d 680 (1994) (quoting *In re Schuoler*, 106 Wn.2d 500, 512, 723 P.2d 1103 (1986)); *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 482 P.2d 775

sentence of 18 months to be an abuse of the trial court's discretion, we affirm the exceptional sentence.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.

ANDERSEN, J.* (dissenting) — For the reasons noted in the unanimous Court of Appeals opinion in this case (*State v. Alexander*, 70 Wn. App. 608, 854 P.2d 1105 (1993)), I dissent; that opinion is absolutely correct.

BRACHTENBACH, J. Pro Tem., concurs with ANDERSEN, J. Pro Tem.

(1971). Since the trial court's decision to impose 18 months cannot be deemed manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons, we find no abuse of discretion under this test either.

*Judge James A. Andersen is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. 4, § 2(a) (amend. 38).