# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46832-8-II |
| Appellant, | |
| v. | |
| SEAN MICHAEL TAUL, | UNPUBLISHED OPINION |
| Respondent. | |

SUTTON, J. — The State of Washington appeals the trial court's order dismissing two charges against Sean Michael Taul based on governmental misconduct under CrR 8.3(b). The State argues that the trial court abused its discretion when it found that the alleged governmental misconduct prejudiced Taul's right to a fair trial. Because the facts do not show that Taul's ability to present a defense or right to a fair trial within the speedy trial period was affected by the alleged governmental misconduct, we agree that the trial court abused its discretion. Accordingly, we reverse the trial court's CrR 8.3(b) dismissal and remand for further proceedings.

## FACTS

### I. PROCEDURAL BACKGROUND

The State charged Taul with residential burglary and fourth degree assault, both with domestic violence aggravating factors. Taul was released on bail, and his trial date was set for September 29, 2014. After Taul failed to appear for a July 23 omnibus hearing, the State amended the information to include a bail jumping charge. Taul was then returned to custody.

On September 24, the State filed its witness list, which included Officer Ly Yong, the victim, the victim's parents, and Nancy Jo Campbell.[1] That same day, the State mailed subpoenas to the victim and her parents notifying them that they were to appear on September 29 to testify. At the September 25 readiness hearing, both parties told the trial court that they were ready to proceed to trial on September 29.

## II. STATE'S MOTION TO CONTINUE

On September 29, 62 days into the 90-day speedy trial period, the State moved for a one-day trial continuance. The prosecutor told the trial court that although she had been ready for trial, she was now seeking a continuance because she had just been notified that Officer Yong, a material witness, "is very, very ill, she indicated [that] she was going to try and come in which was why she waited until 8:00 but she is very ill and cannot make it." Clerk's Papers (CP) at 20 (FF 5).

After the parties discussed whether the officer had been subpoenaed, defense counsel asserted that he had "personal knowledge that neither of the other witnesses on the State's witness list were served," including the victim. CP at 20 (FF 13). He further stated that that the victim's mother had called and told him that "she's already been called off" by the prosecuting attorney's office, who told her that "somebody defending Mr. Taul was sick." CP at 20 (FF 13).

The prosecutor started to address defense counsel's allegations, stating that she (the prosecutor) was the one who had contacted the victim's mother and asking to "'make a brief record as to the discussion.'" CP at 20-21 (FF 14). The trial court told the prosecutor that it did not want to address the service issues and asked the parties to focus on the officer's unavailability and the motion to continue. Later, when the prosecutor stated that she had the relevant affidavits of service

---

[1] Campbell was a witness on the bail jumping charge.

showing that the subpoenas had been mailed, the trial court stated that it was not interested in discussing the affidavits of service at that time.

The trial court found that the officer was a material witness and there was good cause for a continuance, and it verified with the State that it was the State's position that there was no prejudice to Taul by a continuance. It also stated that "there [was] no other motive for the continuance at this time." Verbatim Report of Proceedings (VRP) at 19. As the trial court then considered how to proceed, it discussed starting trial, taking testimony, and then stopping to resume the next day and it asked the prosecutor whether the victim was present and ready to testify that day. The prosecutor responded that she had "told [the other witnesses] to wait until we called them to let them know." CP at 22 (FF 24). After inquiring about the officer's availability the next day, the trial court granted a one-day continuance.

### III. TAUL'S MOTION TO DISMISS

The next day, Taul moved for dismissal under CrR 8.3(b) based on "prosecutorial mismanagement" after serving the State with the motion that morning. CP at 23 (FF 30). Taul argued that the prosecutor had misrepresented the facts by asserting that the victim had been served and that the prosecutor had used Officer Yong's illness as an excuse in order to obtain proper service on the victim.[2] The prosecutor responded that she had not told the trial court that the victim had been personally served, that she had only said a subpoena had been mailed to the victim's mother's house and the mother had "confirmed on the phone that she had her subpoena there," and

---

[2] In the written motion to dismiss, Taul also raised issues about whether the officer had been properly served and issues related to possible untimely discovery. The trial court did not address these arguments.

3

that she (the prosecutor) had attempted to make a more complete record regarding the service but the trial court had directed the parties to focus on the motion to continue. CP at 23-24 (FF 31, 33).

Although the trial court acknowledged that the prosecutor had not stated that the victim had been personally served, it concluded that the prosecutor had "led [the] Court to believe that all the witnesses had been served." VRP at 44. The trial court admonished the prosecutor for misleading the court and initially denied Taul's motion to dismiss.

Despite this ruling, the trial court then allowed Taul to argue that he was prejudiced by the prosecutor's misrepresentation because the State would not have been able to prove the burglary or assault charges if the case had gone to trial on September 29 as originally scheduled. The prosecutor again attempted to clarify the service issue, stating that she had not told the court that the victim had been personally served but only that she (the prosecutor) had sent the subpoena to the victim's address and spoken to the victim's mother who verified that the subpoena had arrived at their house. The prosecutor also presented affidavits showing that the subpoenas had been mailed the previous week before the September 25 readiness hearing.

The trial court stated that it believed the prosecutor had intentionally or unintentionally misled the trial court into believing the victim was ready, willing, and able to testify and had been scheduled to appear that day, that the prosecutor had not attempted to correct any misperception, and that these actions violated RPC 3.3(a)(1), which prohibits lawyers from making false statements of fact or law or failing to correct a false statement of material fact. The trial court also stated that but for this misperception, it would have denied the continuance, and if the victim had not testified, the State would have only been able to prove the bail jumping charge. In a written

No. 46832-8-II

"memorandum of disposition," the trial court dismissed the residential burglary and fourth degree

assault charges.[3, 4]  CP at 13.

The State appeals.

ANALYSIS

The State argues that the trial court misapplied the law and abused its discretion when it

found that the governmental misconduct was prejudicial to Taul's right to a fair trial.  Because the

---

[3] Taul later pleaded guilty to the bail jumping charge.  CP at 138.

[4] More than a month later, the trial court filed its written findings of fact and conclusions of law, which are consistent with the facts described above.

The written "findings" consist almost exclusively of descriptions, often verbatim, of what happened during the September 25 hearing on the motion to continue and the CrR 8.3(b) hearing. *See* CP at 17-28.  The State does not directly challenge any of these "findings" and they appear to be entirely consistent with the record.

Several of the trial court's written conclusions of law, however, actually contain factual findings. *Riley-Hordky v. Bethel School Dist.*, 187 Wn. App. 748, 759 n.11, 350 P.3d 681 (2015) ("A finding of fact that is mislabeled as a conclusion of law will be reviewed as a finding of fact."), *review denied*, 184 Wn.2d 1013 (2015).  Of these, the State appears to challenge the findings that (1) the State misled the trial court into believing that the victim was ready and willing to testify on the first day of trial, (2) the State used the officer's unavailability to avoid having to go to trial without the victim's testimony.  The State argues that it was deprived of notice and opportunity to be heard on Taul's CrR 8.3(b) motion to dismiss and that it was therefore unable to present any evidence showing that it had not intentionally or unintentionally misled the court or attempted to use the officer's unavailability to gain a continuance that the trial court may not have otherwise granted.  The State also argues that the evidence would not have supported a finding of arbitrary action or government misconduct.  Because we resolve this case on other grounds, we do not address these arguments. We treat the remaining unchallenged findings as verities on appeal. *State v. Alexander*, 125 Wn.2d 717, 723, 888 P.2d 1169 (1995).

We note that the trial court's memorandum of disposition states that these charges were dismissed *with* prejudice, but the trial court's written findings of fact and conclusion of law state that these charges were dismissed *without* prejudice.  Thus, it is unclear whether the trial court dismissed these charges with or without prejudice.  Because we reverse the trial court's dismissal, we do not attempt to clarify whether the dismissal was with or without prejudice.

5

record fails to establish that Taul's ability to present a defense or right to a fair trial within the speedy trial period was affected by the alleged governmental misconduct, we agree.

## I. LEGAL STANDARDS

Before the trial court may dismiss a case under CrR 8.3(b), the defendant must show by a preponderance of the evidence both (1) arbitrary action or governmental misconduct and (2) actual prejudice affecting the defendant's right to a fair trial. *State v. Rohrich*, 149 Wn.2d 647, 654, 658, 71 P.3d 638 (2003). Dismissal under CrR 8.3(b) is an extraordinary remedy that is only proper in truly egregious cases of misconduct that materially prejudice the rights of the accused. *Rohrich*, 149 Wn.2d at 655.

We review a trial court's decision on a motion to dismiss for a manifest abuse of discretion. *Rohrich*, 149 Wn.2d at 654. We will find an abuse of discretion "'when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons.'" *Rohrich*, 149 Wn.2d at 654 (quoting *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993)). "A decision is based 'on untenable grounds' or made 'for untenable reasons' if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." *Rohrich*, 149 Wn.2d at 654 (quoting *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)).

## II. NO PREJUDICE

The trial court found governmental misconduct based on its perception that the prosecutor misrepresented that the victim was willing and prepared to testify on September 29, which was a

factor the trial court considered in granting the State's motion to continue trial for one day.[5]  Even assuming, but not deciding, that the trial court properly determined that the prosecutor had misled the court, the record does not support the trial court's finding that any misrepresentation by the State interfered with Taul's ability to present his defense or affected his right to a fair trial.

Before a trial court can dismiss charges under CrR 8.3(b), it must find that the governmental misconduct materially affected the defendant's right to a fair trial, not just that the defendant suffered some form of prejudice.  *State v. Michielli*, 132 Wn.2d 229, 240, 937 P.2d 587 (1997); *State v. Barry*, 184 Wn. App. 790, 797, 339 P.3d 200 (2014).  Thus, "the requirement for a showing of prejudice under [CrR] 8.3(b) is *not* satisfied merely by expense, inconvenience, *or additional delay within the speedy trial period*; *the misconduct must interfere with the defendant's ability to present his case*."  *City of Kent v. Sandhu*, 159 Wn. App. 836, 841, 247 P.3d 454 (2011) (emphasis added).  Prejudice "does not mean merely that if the case went to trial without the continuance, the defendant might be acquitted because of the absence of a witness."  *State v. Duggins*, 68 Wn. App. 396, 401, 844 P.2d 441 (1993).

---

[5] The State argues that the trial court failed to find governmental misconduct or arbitrary action, We disagree, the record clearly shows that the trial court found that the prosecutor had violated the rules of professional conduct by misrepresenting whether the victim was willing and prepared to testify on September 29.

Furthermore, "a dismissal for . . . an improper continuance should be confined to those situations where that consequence is necessary to effectuate the policy of the speedy trial rule." *Duggins*, 68 Wn. App. at 400.[6] "The trial court's authority to grant a dismissal under [CrR 8.3(b)] has been limited to truly egregious cases of mismanagement or misconduct by the prosecutor. It does not extend to acts of simple negligence, as for example, failing to issue one subpoena involving a 1-day or 2-day delay." *Duggins*, 68 Wn. App. at 401.

The trial court explained that if the prosecutor had not misled it about whether the victim was willing and available to testify on September 29, the trial court would have denied the continuance and there would have been no evidence against Taul on the residential burglary and fourth degree assault charges. But the prosecutor's alleged misrepresentation merely resulted in a 1-day trial delay within the 90-day speedy trial period. Although this delay may have enhanced the State's ability to present its case, it did not impair *Taul's* ability to present his defense or violate his speedy trial rights. *See Sandhu*, 159 Wn. App. at 841 ("[T]he misconduct must interfere with the *defendant's* ability to present his case." (Emphasis added.)) Accordingly, the trial court's prejudice finding is not supported by the record.

This decision is further supported by the trial court's discussion about commencing trial, taking testimony, and then stopping to resume the next day. Had the court taken this action, the

---

[6] Taul attempts to distinguish *Duggins*. He argues that *Duggins* addressed whether the court abused its discretion in denying a defense motion to dismiss when the State's witness did not appear at trial and had not been personally served with a subpoena, rather than the trial court's discretion to dismiss the charges if the prosecutor makes misleading statements to the court. *Duggins*, 68 Wn. App. at 397. But here, the result of the prosecutor's alleged misrepresentations was the trial court's granting the continuance, so the issue is whether that continuance itself was prejudicial and *Duggins* is relevant to this analysis.

result would have been the same as if it had granted a one-day continuance. Neither would have been prejudicial to Taul.

Because the prejudice finding is not supported by the record, the trial court abused its discretion when it granted Taul's motion to dismiss. Accordingly, we reverse the dismissal of the residential burglary and fourth degree assault charges and remand for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MAXA, P.J.

MELNICK, J.