# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57334-2-II |
| Respondent, | |
| v. | |
| JOHN MICHAEL BALE, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — John Bale appeals his conviction of two counts of assault in the first degree, arguing that the trial court erred by mistakenly believing it did not have the discretion to run the crimes concurrently under the de minimus crime doctrine. Bale also argues that racism played a role in his sentence, and raises several claims in a statement of additional grounds (SAG) for review.

We hold that the trial court correctly followed the Sentencing Reform Act (SRA) of 1981 procedure in imposing a standard range sentence, and we decline to address Bale's SAG claims because they rely on matters outside of the record. We affirm.

FACTS

I.    BACKGROUND[1]

On July 2, 2012, Officers Stephen Morrison and Charles Schandel contacted three males in a trailer park as part of a narcotics investigation. One of the men contacted was Bale. The

---

[1] The facts found in this section are taken from Bale's prior appeal before this court, found at *State v. Bale*, No. 44172-1-II (Wash. Ct. App. Oct. 14, 2014) (unpublished), http://www.courts.wa.gov/opinions/.

officers requested Bale's identification, but he claimed he was unable to find it. Morrison, fearing for the officers' safety due to Bale's "nervous" demeanor, decided to place wrist restraints on Bale to "detain him [and] frisk him for weapons." *State v. Bale*, No. 44172-1-II, slip op. at 2 (Wash. Ct. App. Oct. 14, 2014) (unpublished), http://www.courts.wa.gov/opinions/. Morrison reached for Bale's wrist, but "as soon as [Morrison] went hands on with [Bale], he start[ed] pulling away." *Id*. Bale then broke free and ran.

The officers pursued Bale, catching up to him and tackling him. When Morrison tackled Bale, Morrison heard a metallic noise, which he later recognized as a pistol being racked. The officers saw Bale gripping a pistol in his right hand. Morrison noticed that the gun's hammer was back, indicating that the gun was cocked. Morrison testified that seeing the cocked gun put him in fear for his life because "there's only one reason to cock a gun . . . and that's to shoot it." *Id*. The gun would not fire without being cocked, but once cocked, the gun would fire with only slight pressure on the trigger.

Schandel testified that Bale "had a death grip on that gun." *Id*. Morrison gripped the gun's barrel in an attempt to prevent Bale from shooting. Morrison yelled at Bale to "drop the gun." *Id*. Instead, Bale turned and began to aim the gun towards Morrison's chest at a distance of a few inches. Morrison had his hands on the gun's slide, meaning that if fired, the gun would "more than likely fire one round and malfunction." *Id*. Morrison was able to wrest the gun away from Bale's grip. The entire struggle lasted five to ten seconds, and Bale at no time attempted to point the gun away from the officers. Bale said nothing during the struggle. Both officers were in fear of being shot.

Bale got away again and continued to run from the officers who chased him. Finally, Morrison apprehended Bale with the use of a stun gun. Morrison thereafter disabled Bale's gun, which was loaded. Officers also found a nylon ankle holster lying between Morrison's patrol car and the location of the struggle.

II.    PROCEDURAL HISTORY

Bale was convicted of two counts of assault in the first degree with a firearm enhancement on each, and one count of possession of a stolen firearm. Bale appealed, and argued that the evidence was insufficient to prove first degree assault because he never fired the gun nor verbally communicated an intent to inflict harm. In an unpublished opinion, this court affirmed the two assault convictions, reversed the possession of a stolen firearm conviction, and ordered that count be dismissed on remand, which required resentencing. The supreme court denied review. *See* Ruling Den. Review, *State v. Bale*, No. 91083-9 (Wash. Apr. 1, 2015).

On August 29, 2022, Bale appeared before the superior court for resentencing arising from the Supreme Court's decision in *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021). Bale argued for a departure from the standard range; the trial court did not find mitigating factors, stating:

> The requirement on Count 1 which is the offender score of six, seriousness level of 12 with a standard range [of] 162 to 216, plus a special allegation of a firearm, possessing a firearm associated with that that was found by the jury. That special allegation requires a 60 month sentence to be imposed and to serve—serve completely. I don't believe that there is any mitigating circumstances that would allow me to serve that, order that anything other than consecutive or the sentence on that charge consecutive to that 60 month sentence.
> The same with Count 2. There's a 60 month allegation that has to be consecutive to the first 60 month special allegation, plus the offender score is zero on that matter as a matter of law with a standard range on a level 12 crime of 93 to 123. The rule of law requires that that be run consecutive, unless I do find mitigating circumstances that would allow me to issue a sentence that is a[n] exceptional sentence underneath the standard range.
> There are no statutory (indiscernible). I was looking at that very specifically. But I don't—I don't see that. they—the statutes are very clear to me

3

that I am required to sentence these consecutively. The question is what the numbers are gonna be. And that's really the question.

Rep. of Proc. (RP) at 50.

The trial court imposed standard range sentences for the two assault in the first degree convictions and ran them consecutively pursuant to RCW 9.94A.589(1)(b). The court also sentenced Bale to consecutive firearm enhancements for each count for a total of 342 months.[2] In the present case, Bale appeals, contending that the sentencing court mistakenly failed to recognize a de minimus factor in deciding it did not have the discretion to run the assault counts concurrently[3].

ANALYSIS

I.      SENTENCING

Bale argues that the sentencing court erred by mistakenly believing that it did not have the discretion to run crimes concurrently under a de minimus mitigating factor. We disagree.

A.      Legal Principles

We review a sentencing court's decision to deny an exceptional sentence for abuse of discretion. *State v. McGill*, 112 Wn. App. 95, 100, 47 P.3d 173 (2002). A court abuses its discretion when it denies an exceptional sentence based on an incorrect belief that it is not authorized to grant the sentence. *State v. O'Dell*, 183 Wn.2d 680, 696-97, 358 P.3d 359 (2015).

---

[2] At this, Bale's third sentencing, his offender score was reduced to 6.

[3] Bale also argues that his sentence was the result of racism, but did not assign error on this basis. While he devotes a portion of this brief to discussing the general presence of racism in the court system, he does not specify any error committed in the trial court. We are left to presume he is making an equal protection argument, but even so, he does not articulate a standard that we should apply, nor does he set out elements of such a claim or any analysis as it relates to his case specifically. In light of his failure to specify his claim, we cannot address it.

Generally, a sentencing court must impose a sentence within the standard range set by the SRA. *State v. Graham*, 181 Wn.2d 878, 882, 337 P.3d 319 (2014). In general, a defendant cannot appeal a standard range sentence. RCW 9.94A.585(1); *State v. Nevarez*, 24 Wn. App. 2d 56, 60, 519 P.3d 252 (2022), *review denied*, 1 Wn.3d 1005 (2023). This rule does not prohibit defendants from appealing the process by which the trial court imposed its sentence. *In re Pers. Restraint of Marshall*, 10 Wn. App. 2d 626, 635, 455 P.3d 1163 (2019).

The SRA sets standard range sentences for multiple serious violent offenses in RCW 9.94A.589(1)(b). Assault in the first degree is a serious violent offense. RCW 9.94A.030 (46)(v). Under the SRA's multiple offense policy, running the sentences for two or more serious violent offenses consecutively is considered a standard range sentence. RCW 9.94A.589(1)(b). However, RCW 9.94A.535(1) provides that a sentencing court may depart from the standard sentence range for substantial and compelling reasons, and it may "impose an exceptional sentence below the standard range if it finds that mitigating circumstances are established by a preponderance of the evidence." The court may order that multiple serious violent offenses run concurrently as an exceptional sentence downward only if it finds mitigating circumstances that justify its departure from the standard range. RCW 9.94A.535(1); *In re Pers. Restraint of Mulholland*, 161 Wn.2d 322, 329-31, 166 P.3d 677 (2007). The SRA provides a nonexclusive list of mitigating circumstances that can support an exceptional sentence below the range. RCW 9.94A.535(1).

The de minimis nature of the acts constituting a particular crime is not on that list. But the SRA states that its list of mitigating factors is "illustrative only and [the listed factors] are not intended to be exclusive reasons for exceptional sentences." *Id*. The de minimis nature of a crime can constitute a nonlisted mitigating factor sufficient to support an exceptional sentence below the

range.  *State v. Alexander*, 125 Wn.2d 717, 724, 888 P.2d 1169 (1995); *State v. Thomason*, 199 Wn.2d 780, 788, 512 P.3d 882 (2022).

Importantly, the fixing of punishments is within the purview of the legislature, which has given courts limited discretion to grant exceptional sentences.  *State v. Rousseau*, 78 Wn. App. 774, 777, 898 P.2d 870 (1995).  Absent reliance by a trial court on an unconstitutional basis for imposing a particular sentence that discretion is not disturbed, and the exercise thereof inherently involves the possibility of different results.  *Id*.  Offenders may in some instances benefit from a court's exercise of discretion, but offenders do not have a right to a particular result that lies within the court's discretion.  *Id*.

B.     The Trial Court Correctly Followed SRA Procedure in Imposing the Standard Range Sentence

The trial court appropriately imposed Bale's standard range sentence previously imposed. There is no factual support for Bale's claim that the trial court abused its discretion because it was unaware of its authority to deviate from the standard range.  The sentencing court plainly stated that an exceptional sentence was not justified *without mitigating factors* and that it did not find mitigating factors to exist.  This is not an abuse of discretion, but rather an appropriate exercise of discretion, discretion that allows a trial court to disagree that a certain criminal violation is de minimus, just as the trial court did here.[4]

---

[4] Notably, while Bale cites *Alexander* as support for his assertion that the crimes herein were de minimus, *Alexander* addressed circumstances involving possession of .03g of controlled substances.  125 Wn.2d at 719.  Those circumstances are a far cry from the circumstances here, where the responding law enforcement officers were nearly killed by Bale.  Bale's reliance on *Alexander* is misplaced.

6

The trial court was aware of its authority to deviate from the standard range in light of mitigating factors and did not abuse its discretion in declining to do so and instead imposing the standard range sentence.

SAG

Bale raises two additional grounds for review in his SAG. First, Bale argues that he was improperly searched and detained because the information gleaned from the informant did not provide reasonable suspicion, and the officers did not observe suspicious behavior. Specifically, Bale claims that we should reach the same result as *State v. Hopkins*, 128 Wn. App. 855, 117 P.3d 377 (2005). Second, Bale argues that he was wrongly seized when asked to identify himself and placed in an unwarranted investigative detention, and the trial court erred by allowing the illegal search into the trial.

The record before us does not support any of Bale's contentions: it only contains a report of proceedings in regards to Bale's 2022 sentencing hearings, where the investigatory stop was not at issue. We hold that these arguments rely on information outside of the record and we decline to address them, moreover, they are outside the scope of the proceedings before us, which regard the most recent sentencing hearing only. RAP 10.10(c) (A SAG should refer only to documents that are contained in the record on review.); *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) (We can consider only matters demonstrated by the trial record.).

We affirm.

7

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Cruser, A.C.J.

_____
Che, J.