[No. 39094.　Department Two.　December 28, 1967.]

RICHARD A. CHACE, *Respondent*, v. J. R. KELSALL *et al.*, *Appellants*.*

*Thomas C. McCarthy*, for appellants.

*Croson, Johnson & Wheelon*, by *Jerome M. Johnson*, for respondent.

*Reported in 435 P.2d 643.

Langenbach, J.†—Plaintiff-respondent commenced this action for an accounting by defendants-appellants (who will be referred to in the singular) for one-half of the profits and royalties received by appellant from the proceeds of a sale of a certain patent. Respondent claimed the same under a purported oral agreement with appellant. There was a judgment for respondent and in appealing appellant submitted the record upon the findings, conclusions and judgment. There is no statement of facts.

Appellant owned an interest in an invention known as Self Sealing Container. Respondent was a co-inventor of a toggle-locking device, with Boeing Airplane Company (hereinafter referred to as Boeing). The parties orally agreed that respondent would provide appellant with an equal share in a corporation to be formed to exploit the license to the toggle-lock patent and in return appellant would pay respondent one-half of the profits and royalties which appellant might receive from the Self Sealing Container patent. In addition, it was agreed that each had a first option to purchase the other's interest in appellant's patent in event either wished to sell his undivided interest.

Respondent received a license from Boeing, which was issued jointly to the parties on advice of legal counsel. They then assigned their rights therein to a newly formed corporation for all the corporate stock to be divided equally between them. Three months later a new corporation was formed and their stock was exchanged for equal shares of its stock.

On December 28, 1955, the parties purported to memorialize their oral agreement into a written one, which follows:

This agreement puts in written form the terms of a verbal agreement made in July of 1955 between the undersigned.

The terms of this agreement are as follows:

---

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

1. R. A. Chace agrees to give 636 common shares and 1225 preferred shares of stock in Tog-Loc, Inc. to J. R. Kelsall for services rendered and in return for fifty per cent (50%) of the profits and royalties J. R. Kelsall receives from Patent Serial No. 339143 entitled "Self Sealing Container." J. R. Kelsall agrees to pay the above profits and royalties for the stock in Tog-Loc, Inc. and for services rendered by R. A. Chace in connection with the development of the "Self Sealing Container" equipment.

2. It is further agreed that in the event either of the undersigned desires to sell their holdings, the other shall have the first option on purchasing sellers stock in Tog-Loc, Inc. and/or the one half share (50%) of the profits and royalties received from Patent Serial No. 339143. The option will be good for one year from the date of the offer to sell. The selling price will be just and equitable to both parties. The 300 preferred shares of stock in Tog-Loc, Inc. to be paid to Frank H. Rose and Swadco, Inc. for promotion will not be covered by this agreement.

3. It is further agreed that the undersigned will always vote their stock together and thus assure control of Tog-Loc, Inc.

Signed this 28th day of December, 1955 at Bellevue, King County, State of Washington.

Appellant made some payments under this agreement to respondent as the accounting made in this case showed a sum total of $3971.44 was paid from 1956 to 1962. In 1962 appellant sold their interests in the Self Sealing Container and thereupon ceased to make any further payments to respondent. Appellant continued to represent to respondent that they both still retained their interest in this invention.

This action was commenced in March 1965, for an accounting. The answer admitted the execution of this agreement; that certain sums had been received attributable to the invention; denied the balance of the allegations and alleged that appellant had received no consideration for an agreement to pay anything to respondent.

After a trial the court entered findings, conclusions, and an interim order directing an accounting. Later appellant made such an accounting. The interim order provided that if the accounting was not controverted, respondent should

have a judgment according to the disclosures made in the accounting.

Prior to the accounting appellant moved for a stay of proceedings based upon an application for a discharge in bankruptcy. This was denied in a finding of fact by the trial judge that the evidence showed a nondischargeable debt under 11 U.S.C. § 35 (1964), relating to bankruptcy laws of the United States. When the respondent did not controvert the accounting made by appellant, the court rendered a judgment for the amount therein disclosed as the balance due respondent.

There were eight assignments of error. The first four asserted error in four findings of fact. But, in the absence of a statement of facts these cannot be examined and considered.

The fifth assignment asserted error in the conclusion that the true agreement of the parties was different from the written agreement, that respondent had performed thereunder, and that appellant should be required to account.

The sixth assignment asserted error in entering the interim order directing an accounting; the seventh in the conclusion that appellant's debt was not dischargeable in bankruptcy and in the denial of appellant's motion to stay proceedings; and the eighth in entering judgment for respondent and against appellant, with the determination that said judgment was not dischargeable in bankruptcy.

In their brief appellants stated: "There are two questions in this appeal: One: Is the written contract sued on ambiguous and thus exempt from the parol evidence rule; and Two: Is the debt of appellants subject to discharge in bankruptcy."

■ In *In re Hollibaugh v. Prosser*, 58 Wn.2d 18, 20, 360 P.2d 737 (1961) the court stated:

> The rule is well established in this court that in the absence of a statement of facts we must assume that the evidence sustains the trial court's findings and that the same will be accepted as verities. *Wilder v. Baker*, 57 Wn. (2d) 479, 358 P. (2d) 133 (1960).

The sole issue upon this appeal, in view of this state of the record, is to determine whether the findings of fact support the judgment entered by the trial court.

A later case to the same effect is *Guay v. Washington Natural Gas Co.*, 62 Wn.2d 473, 477, 383 P.2d 296 (1963), which stated: "Neither party having sent up a statement of facts, the pattern of events and circumstances are deemed locked in by the findings of fact as promulgated by the trial judge."

In findings which were not challenged and thus became verities, the trial court found: appellant was the owner of an interest in an invention known as Self Sealing Container; that respondent was a co-inventor of a toggle-locking device with Boeing and had the original opportunity to exploit a license to this patent from Boeing; that the parties had discussed the prospects for promotion and sale of the toggle-locking product. Respondent procured a license from Boeing and had it issued in their joint names and had it transferred to a corporation formed for this purpose in which each had equal shares. Later a new corporation was formed to which their rights were assigned for equal shares of its stock. Respondent was reluctant to leave Boeing employment without a hedge against possible failure of the toggle-lock venture. Respondent had also assisted appellant in the promotion of the Self Sealing Container and as a result of these mutual efforts, respondent was to receive a 50 per cent interest in appellant's patent based on the profits and royalties derived from it. In addition, it was agreed that upon a sale by either party of his interest in the Self Sealing Container, the other partner was to have first option to purchase such interest to be sold.

Based upon such negotiations the oral agreement between said parties was later reduced to writing by appellant and jointly signed. In so doing, the written agreement varied from their oral agreement. On this basis, parol evidence was admitted to explain the ambiguity.

The agreement, as written, stated that respondent agreed to *give* certain shares of stock in a corporation (not yet

formed) to appellant for services rendered and in return for 50 per cent of the profits and royalties appellant received from his patent. The court, however, found that the agreement was that respondent would provide appellant with an equal interest in the corporation to be formed to exploit the toggle-lock license, and in return appellant agreed to pay respondent 50 per cent of the profits and royalties which he might receive from his own patent. Both the oral and written agreements provided that each of them would have a first option to purchase the undivided interest of the other in event of a projected sale by either.

In the absence of the statement of facts, these findings will not be disturbed.

The trial court further found that in 1962 appellant surreptitiously sold his interest in his patent, thus becoming indebted to respondent for 50 per cent of the profits thus received. He secreted from respondent the facts of such sale and receipts, with the admitted purpose of avoiding the necessity of having to settle with respondent. In order to deceive respondent as to his financial condition, appellant falsely represented, both orally and by mailed "royalty statements," that appellant had retained his interest in the Self Sealing Container. Respondent relied on these to his detriment. Appellant's conduct in this regard, which in his own words was a "subterfuge," constituted willful injury to respondent's interest in the Self Sealing Container and the profits and royalties therefrom and resulted in a misappropriation of funds to which respondent was entitled.

In making such a secret and unauthorized sale of these patent rights, appellant destroyed respondent's property rights in the "first option" portion of their oral agreement. This property right had become vested in respondent, who by this wrongful tort was divested thereof. Since no statement of facts has been submitted, this finding must be considered a verity.

The second question raised by appellant is: Was the debt of appellant subject to discharge in bankruptcy?

Section 17a of the Bankruptcy Act, 11 U.S.C. § 35 (1964), insofar as applicable, reads as follows:

A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (2) are liabilities for obtaining money or property by false pretenses or false representations . . . or for willful and malicious injuries to the person or property of another, or . . . (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity.

The oral agreement between the parties provided that in the event either wanted to sell, the other shall have a *first option* to purchase the seller's interest in either patent. The option was to be good for the period of 1 year from the date of the offer to sell.

Appellant argued that under this oral agreement respondent's only property was his right to collect money from appellant. This was not the fact. Respondent had a "property right" in this "first option" to buy in the event of an offer of sale, in addition to his share of the profits.

The case of *Fidelity & Deposit Co. of Maryland v. Arenz,* 290 U.S. 66, 78 L. Ed. 2d 176, 54 Sup. Ct. 16 (1933), dealt with an attempt of a debtor to procure a discharge in bankruptcy, involving a false representation in the procurement of a performance bond. At 68-69 the court said:

"Property" is a word of very broad meaning, and when used without qualification, expressly made or plainly implied, it reasonably may be construed to include obligations, rights and other intangibles as well as physical things. [Citing cases.] For the meaning rightly here to be given the word, regard is to be had to the statute and connection in which it is found. [Citing cases.] The Act, while making discharge of bankrupts the general rule, conditions the grant upon adherence by every applicant to the standards of honesty and fair dealing in business transactions that are required or reflected in § 32 (b) (1), (2), (3), (4), (6), (7).

■ The surreptitious sale by appellant not only deprived respondent of his share of the "profits and royalties"

of the patent, but also his right of first option to buy. This was destroyed entirely. This right of first option to buy was a valuable and vested property right of infinite duration, possessed by respondent. It was a "property right" and its malicious injury and secret conversion created an exception to a discharge in bankruptcy.

Such a first option may be considered as a preemption.

" . . . ' "A pre-emption differs materially from an option. An option creates in the optionee a power to compel the owner of property to sell it at a stipulated price whether or not he be willing to part with ownership. A pre-emption does not give to the pre-emptioner the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the pre-emption, at the stipulated price. Upon receiving such an offer, the pre-emptioner may elect whether he will buy. If he decides not to buy, then the owner of the property may sell to anyone." ' " *Nelson v. Reisner,* 51 Cal. 2d 161, 166, 331 P.2d 17 (1958).

Here, appellant first received the money for the sale of the invention and subsequently made the false statements. One clause of the bankruptcy statute, *supra,* refers to "willful and malicious injuries to the property of another, . . . ."

This exception to the discharge in bankruptcy includes a conversion of another's property. *McIntyre v. Kavanaugh,* 242 U.S. 138, 61 L. Ed. 205, 37 Sup. Ct. 38 (1916); *In re Binsky,* 6 F. Supp. 789 (S.D.N.Y.1934); *L. & M. Bldg. & Supply, Inc. v. Soileau,* 176 So. 2d 756 (La. App. 1965); 1 Collier, Bankruptcy, § 17.09, at 1599 (14th ed.); 8 Remington, Bankruptcy, § 3331, at 199-204 (1955); MacLachlan, Bankruptcy, § 116, at 102-03 (1956).

In *McIntyre v. Kavanaugh, supra,* the defendant held stock certificates belonging to the plaintiff as security for the plaintiff's debt to the defendant. The stock was worth six times the debt. Without authority and without plaintiff's knowledge the defendant sold the stock and kept the proceeds, and then went bankrupt. The court held the

bankrupt is still liable. This exception to the discharge includes a conversion, since this was a malicious injury to the plaintiff's property. "It was an honest debtor and not a malicious wrongdoer that was to be discharged." *McIntyre v. Kavanaugh, supra,* at 142.

Similarly, in *In re Binsky, supra,* the defendant, as collateral security for loans, executed an assignment in favor of the plaintiff bank covering his interest in a corporation. Then he received $4,000 on account of his interest in the corporation. He converted these sums, though they belonged to the bank by way of the assignment. The court there held that the debt was not discharged.

The determination of the nature of respondent's interest is based upon the language in the agreement, as the trial court found such language to be:

[A]nd in return, defendant Kelsall *agreed to pay* plaintiff 50% of the profits and royalties which he, Kelsall, might receive . . . .

Plaintiff and defendant further each promised that the other should have the first option in purchasing their respective interests . . . in the event either wished to sell. (Italics ours.)

In one finding the court stated: "Defendant's conduct constituted willful injury to plaintiff's interest in the Self-Sealing Container and the profits and royalties therefrom, . . . ." In the absence of a statement of facts, this must be accepted as true.

The record shows that appellant agreed to pay respondent 50 per cent of the profits and royalties and granted him a first option to buy in the event of sale. Appellant breached this agreement; the record showed the amount of proceeds wrongfully withheld from respondent. Appellant's actions clearly barred this debt from discharge under the Bankruptcy Act. Consequently, the judgment must be and is hereby affirmed.

FINLEY, C. J., DONWORTH, HAMILTON, and NEILL, JJ., concur.

February 26, 1968. Petition for rehearing denied.