[No. 49776–1.   En Banc.   June 14, 1984.]

ROBERT P. MORRIS, ET AL, *Appellants*, v. GORDON WOODSIDE, ET AL, *Respondents*.

*David F. Berger,* for appellants.

*Jon Marvin Jonsson,* for respondent Woodside.

*Ellington & Johansen,* by *Helen M. Johansen* and *Anne L. Ellington,* for respondents Slichter, et al.

BRACHTENBACH, J.—Is the following real estate contract due–on–sale clause enforceable: "During the term of this Real Estate Contract between seller and purchasers [*sic*]. Purchasers agree not to sell said premises without paying off said Real Estate Contract."?

The facts: In 1978 plaintiff/appellant Morris, as purchaser, entered into a real estate contract with defendant/respondent Woodside, as seller, which contract contained the above clause. The contract concerned the sale of residential property on Vashon Island for a sum of $65,000. In 1980 Morris conveyed the property to defendants/respondents Slichter and Wallace for the sum of $125,000. Slichter and Wallace made a 25 percent down payment, with the balance evidenced by a promissory note and secured by a deed of trust.

In the sale agreement between Morris and Slichter and Wallace, Morris agreed to maintain in good faith the underlying Woodside/Morris contract. However, Morris did not inform Slichter and Wallace that the underlying Woodside contract contained a due–on–sale clause. Morris also did not inform Woodside of the sale to Slichter and Wal-

lace. Furthermore, without informing either Woodside or Slichter and Wallace of his intent to do so, Morris did not comply with the due–on–sale clause after the sale to Slichter and Wallace closed.

For the next 19 months all parties made timely payments under their respective agreements. Slichter and Wallace paid Morris $1,000 per month on the promissory note while Morris paid Woodside $525 per month pursuant to their installment contract. When Woodside finally learned of the sale by Morris to Slichter and Wallace, and thus of Morris' noncompliance with the due–on–sale clause, he refused Morris' monthly payment for March 1982 and served a "Notice of Intention to Declare a Forfeiture of and Cancel Contract" in April 1982. This notice was also served upon Slichter and Wallace who, thereafter, made their monthly payments into a trust account and then the registry of the court.

Morris thereafter brought suit against Woodside and Slichter and Wallace. Morris sought declaratory relief that the due–on–sale clause was an unenforceable restraint on alienation, and that all instruments were otherwise valid and enforceable. Morris also sought foreclosure of the Slichter and Wallace deed of trust *if* declaratory relief was granted and Slichter and Wallace failed to bring their payments current.

Woodside counterclaimed against Morris for default under their real estate contract and cross–claimed against Slichter and Wallace for "wrongful possession of real estate." Woodside sought to cancel the Morris/Slichter and Wallace contract and be put in full possession. Slichter and Wallace counterclaimed against both Morris and Woodside. They alleged, *inter alia,* that Morris had breached their contract; that Woodside should be restrained from foreclosing; and that they should be allowed to assume the Morris/Woodside obligation. All parties moved for attorney fees under their respective agreements.

After a 3–day trial, the court upheld the Woodside contract, finding as a matter of law that the due–on–sale clause

was enforceable. The court found that Morris' failure to comply with that clause breached not only the Woodside contract but the Slichter and Wallace contract as well.

As an equitable remedy, the court entered an order restructuring the parties' agreements. It awarded Woodside all money paid into the court registry by Slichter and Wallace. It also directed Slichter and Wallace to pay directly to Woodside all monthly payments they owed to Morris under their promissory note until the balance of the underlying Morris/Woodside real estate contract was satisfied. All payments by Slichter and Wallace to Woodside, including the amounts previously deposited in the registry of the court, were to be credited against the Morris/Slichter and Wallace promissory note. After satisfying the Morris/Woodside obligation, Slichter and Wallace would resume paying directly to Morris. The court awarded Woodside, Slichter and Wallace attorney fees against Morris in the total amount of $16,706.25. We affirm.

Appellant makes 14 assignments of error which he asserts raise six issues. The findings of fact and conclusions of law to which error is assigned are not set out in the brief. This violates RAP 10.4(c). Compliance with this rule is essential to orderly appellate review. Prior to oral argument, the single set of clerk's papers is studied by the assignment justice. Thus, as a practical matter, violation of RAP 10.4(c) denies the members of the court, prior to oral argument, access to the very materials upon which appellant relies to assert errors.

Even more dispositive of most issues here is appellant's failure to provide a verbatim report of proceedings. The findings of fact are thus verities and binding upon this court. *Chace v. Kelsall,* 72 Wn.2d 984, 987, 435 P.2d 643 (1967).

The trial court found as a matter of fact:

1. "There is no evidence of fraud, overreaching, or patent inequality of bargaining position in the Morris/Woodside Contract; the Contract was freely entered into between two private parties";

2. Morris negotiated in bad faith with Woodside prior to the sale to Slichter and Wallace;

3. Woodside neither waived the due–on–sale clause nor approved the sale to Slichter and Wallace;

4. "The sale of the realty by plaintiff Morris to defendants Slichter and Wallace did not threaten or endanger defendant Woodside's security but perhaps enhanced the security . . .";

5. That Slichter and Wallace have complied substantially with their agreements with appellant, and that Morris failed to inform them of the due–on–sale clause of the Woodside contract at the time of their transaction;

6. That Morris breached his contract with Woodside;

7. That Morris breached his contract with Slichter and Wallace; and

8. "With respect to the Woodside/Morris due–on–sale clause the Court finds little, if any, 'quantum of restraint' as to the sale by Morris to Slichter and Wallace. . . . Said due–on–sale clause did not and would not have restrained the sale to Slichter and Wallace had plaintiff Morris elected to comply with the due–on–sale clause and to pay off Woodside's equity."

It is clear that most, if not all, of the above findings of fact are just that—resolution of disputed matters of evidence. As stated above, on this record, we must accept them as verities.

Although most of these findings of fact resolve the issues raised by appellant, there is one legal issue which we can properly consider on this record. That issue is whether a due–on–sale clause in a contract for the sale of residential property is enforceable when the contract is between private parties.

Appellant contends that our decision in *Bellingham First Fed. Sav. & Loan Ass'n v. Garrison*, 87 Wn.2d 437, 553 P.2d 1090 (1976) is applicable. He asserts that *Bellingham* prohibits enforcement of due–on–sale clauses unless enforcement is necessary to protect the lender's security. Therefore, since Woodside's security was not threatened by

the sale to Slichter and Wallace, the due–on–sale clause was not enforceable.

While *Bellingham* does hold that due–on–sale clauses are not enforceable unless necessary to protect the security of the lender, *Bellingham* involved an institutional lender, a federally authorized savings and loan association. Respondents urge that there are sufficient differences between the institution whose business and expertise is lending and the casual private seller or lender to justify a distinction and a different rule. We agree.

One basic fact that distinguishes the private lender from the institutional lender is that a private party is not in the business of lending capital. The institutional lender is a full–time operation with staff expertise to investigate all aspects of a proposed sale of secured property and to spread its risks beyond this single transaction. It has reserves to cover potential losses. It or its attorneys will be knowledgeable about the risks and rights of permitting a subsequent transaction. It can monitor future transactions by its debtor or his successor. The typical private contract seller will not possess these resources. For example, Woodside was on his way to Europe when Morris sold, presumably unavailable to investigate the wisdom of consent, including credit worthiness of the intended purchasers, intended use of property and other relevant factors. He did not even learn of the sale by Morris until 19 months after it occurred. Moreover, private parties are of equal bargaining power and can negotiate over such clauses. These factors justify a different policy rule.

Contrary to appellant's position, *Terry v. Born,* 24 Wn. App. 652, 604 P.2d 504 (1979) does not conflict with our decision. While *Terry* involved private parties, the real estate contract at issue in *Terry* prohibited conveyance, assignment *and* prepayment over a 20–year period. The court followed *Bellingham* and *Miller v. Pacific First Fed. Sav. & Loan Ass'n,* 86 Wn.2d 401, 545 P.2d 546 (1976), holding that such a drastic restraint could only be justified as reasonable if it was necessary to protect the security of

the lender. *Terry,* at 653. The clause which was at issue in *Terry,* however, is not even similar to the clause at issue in this case. This due–on–sale clause does not prohibit conveyance, assignment or prepayment. Thus, *Terry* does not stand for the proposition advanced by the appellant.

Language found in *Miller v. Pacific First Fed. Sav. & Loan Ass'n, supra* at 406, provides guidance in this case. It dealt with the contractual right of the lender to raise the interest rate upon transfer of the mortgaged premises. We held:

> Therefore, this kind of clause is enforceable except in situations where its operation "would be inequitable under the circumstances" and thus would justify the exercise of the court's equitable powers.

*Miller,* at 406. That general principle is applicable here.

A due–on–sale clause between private parties is enforceable if, in fact, it does not constitute an unreasonable restraint upon alienation. Resolution of this question involves factual determinations and consideration of the equities.

Here the trial court found "little, if any, 'quantum of restraint' as to the sale by Morris to Slichter and Wallace." The trial court also found that Morris negotiated with Woodside in bad faith concerning the due–on–sale clause; that Morris failed to tell Slichter and Wallace of the clause and of his intention to not comply with it; and Morris failed to inform Woodside of the sale and his intention to not comply with the due–on–sale clause. Being bound by these findings, we must affirm.

All parties also argue that the Garn–St Germain Depository Institutions Act (Garn Act), 12 U.S.C. § 1701j–(3) (1982) supports a decision in their favor. We do not agree with the parties' positions. Contrary to the appellant's position, *Bellingham* did not address private parties and, therefore, could not have created a "window period" exemption under the Garn Act for due–on–sale clauses in private party contracts. *See generally Perry v. Island Sav. & Loan Ass'n,* 101 Wn.2d 795, 684 P.2d 1281 (1984).

Similarly, the respondent's assertion that the Garn Act operates to make due–on–sale clauses enforceable is not well taken because the act is not applicable in this case. The Morris/Woodside contract, which created the due–on–sale clause, and the Morris/Slichter and Wallace transaction, which triggered the due–on–sale clause, both took place prior to October 15, 1982, the effective date of the Garn Act.

The judgment is affirmed and the matter remanded to the trial court for determination of attorney's fees on appeal.

WILLIAMS, C.J., ROSELLINI, UTTER, DOLLIVER, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.