**FILED**

**November 26, 2013**

**In the Office of the Clerk of Court
WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

|  |  |  |
|---|---|---|
| PALMER D. STRAND, | ) | |
| PATRICIA N. STRAND, | ) | No. 31340-9-III |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| SPOKANE COUNTY ASSESSOR, | ) | |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, J. — Palmer and Patricia Strand challenged the Spokane County

Assessor's valuation of their residential property before the Spokane County Board of

Equalization and the Board of Tax Appeals. Both rejected their appeals. They sought

judicial review in superior court, which upheld the validity of the agency action. They

now appeal the order of the superior court. We agree that the Strands have not met their

burden of proof and affirm.

### FACTS AND PROCEDURAL BACKGROUND

Palmer and Patricia Strand own a five-acre single-family residential property

located on Long Lake, in Nine Mile Falls. They purchased the ground on which the

home is located in 2000, for $100,000. They built a ranch-style home with attached

garage and a 1,200 square foot shop, completing them in 2003. The total living area

of the home is about 4,096 square feet, with an above-ground living area and finished basement. The quality of the construction is rated "'average-minus.'" Administrative Record (AR) at 130.

In 2009 the county assessor conducted an exterior inspection of the Strands' property for tax purposes, with the Strands in attendance. According to an appraising supervisor who was present and whom the Board of Tax Appeals later found credible, Ms. Strand refused to let the assessor enter the home to inspect the interior. The assessor consequently relied on information from earlier assessments, ultimately valuing the land at $200,000 and the improvements at $249,900, for a total value of $449,900.

The Strands petitioned the Spokane County Board of Equalization to reduce the valuation to $320,000. Their petition and evidence identified errors in the assessor's work and presented comparable sales and other evidence of their own. They attended a hearing of the equalization board in August 2010 at which their petition was considered. Ms. Strand testified. After considering the evidence, the five-member board determined that the Strands had failed to meet their burden of presenting clear, cogent, and convincing evidence that the assessor's valuation was incorrect and sustained the determination of the assessor.

The Strands appealed the decision of the equalization board to the Board of Tax Appeals (Board). A telephonic hearing was held in August 2011 before a tax referee presiding for the Board. Ms. Strand testified as did Joseph Hollenback, an appraisal supervisor for the assessor. After hearing the testimony, reviewing the evidence, and considering the arguments of the parties, the referee issued a 23-page initial decision that summarized the parties' evidence and testimony and set forth her findings and conclusions.

Among the referee's findings were that the Strands alleged many inaccuracies in the assessor's sales grid, records and descriptions; faulty appraisal techniques; and invalid comparison characteristics—flaws that they "broadly characterized as frauds committed by the Assessor." AR at 147-48 (Finding of Fact 9). While the referee found some errors in the assessor's information, she nonetheless found the Strands' allegation of fraud to be "unsupported by any credible evidence," adding that the "alleged errors in the description of the subject are mostly minor in nature and do not affect the valuation determination" and "[t]here has been no fraud committed by the Assessor in the valuation of the Owners' property." *Id.* at 148 (Finding of Fact 10). She further found:

> The alleged errors do not diminish the weight the Board attaches to the Assessor's sales grid. Most of the matters cited by the Owners are trivial, irrelevant, and immaterial.

*Id.* (Finding of Fact 11). Concluding that the Strands had failed to meet their burden of proof, she sustained the determination of the equalization board and ordered that the

3

county apply land, improvement, and total values of $200,000, $249,900, and $449,900 respectively to the Strands' property.

The Strands petitioned the Board for review of the initial decision of the tax referee. The Board concluded that "the issues raised by the Appellant were adequately addressed in the Initial Decision and that the evidence was properly considered." *Id.* at 13. It denied the petition and adopted the initial decision as its final decision.

The Strands then filed suit in superior court seeking judicial review of the Board decision. The superior court heard oral argument of their appeal in June 2012, found that the Board's final decision "is not contrary to law and is adequately supported by substantial evidence in the record," and affirmed. Clerk's Papers at 445.

The Strands finally sought direct review of the superior court's decision by the Washington Supreme Court. The Supreme Court entered an order transferring the appeal to this court.

## ANALYSIS

We review decisions of the Board of Tax Appeals under the Administrative Procedure Act (APA), chapter 34.05 RCW, which places the burden of demonstrating the invalidity of agency action on the party asserting invalidity—here, the Strands. RCW 34.05.570(1)(a); *Spokane County v. E. Wash. Growth Mgmt. Hearings Bd.*, 173 Wn. App. 310, 325, 293 P.3d 1248 (2013). On appeal, we review the Board's decision from the same vantage point as the trial court, applying APA standards directly to the record

4

before the Board. *Id.* We will grant relief from a Board order only if we determine that it suffers from one or more of the infirmities identified in RCW 34.05.570(3). *Id.* (citing *Lewis County v. W. Wash. Growth Mgmt. Hearings Bd.*, 157 Wn.2d 488, 498, 139 P.3d 1096 (2006)). We are authorized by the APA to grant relief only if we determine that the person seeking judicial relief has been substantially prejudiced by the agency action complained of. RCW 34.05.570(1)(d).

The Strands appeal pro se. Their briefing does not contain assignments of error and issues pertaining to the assignments of error of the sort required by RAP 10.3(a)(4). It also does not identify the statutory infirmity or infirmities on which they rely for their appeal. We construe the rules of appellate procedure liberally to promote justice and facilitate the decision of cases on the merits, however, *see* RAP 1.2(a), and are able to discern three general assignments of error.

First, the Strands argue that their constitutional rights were violated when the Board failed to give substantial weight to some of their evidence after they refused entry to the assessor, implicitly basing that assignment of error on RCW 34.05.570(3)(a). We review agency orders for claimed constitutional error de novo.

Second, they argue that the tax referee violated the APA's rule-making requirements, implicitly basing that allegation of error on RCW 34.05.570(3)(c). We review allegations that an agency has engaged in unlawful procedure or failed to follow a prescribed procedure de novo.

5

Finally, they assign error to 15 of the Board's findings of fact, implicitly basing that part of their appeal on RCW 34.05.570(3)(e). We review allegations that an agency's order is not supported by substantial evidence by determining "whether there is 'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.'" *Kittitas County v. E. Wash. Growth Mgmt. Hearings Bd.*, 172 Wn.2d 144, 155, 256 P.3d 1193 (2011) (internal quotation marks omitted) (quoting *Thurston County v. W. Wash. Growth Mgmt. Hearings Bd.*, 164 Wn.2d 329, 341, 190 P.3d 38 (2008)).

We address these three areas of alleged error in turn.

### I. Alleged Constitutional Error

All real property in Washington subject to taxation must be listed and assessed every year. RCW 84.40.020. An assessor who establishes a property's value using statistical update techniques "shall cause taxable real property to be physically inspected and valued at least once every six years." RCW 84.41.030, .041. The property tax statute requires physical inspection of the exterior of property to ensure correct valuation. *State v. Vonhof*, 51 Wn. App. 33, 40, 751 P.2d 1221 (1988) (assessor's presence on exterior of property under RCW 84.40.025 is not a search within state or federal constitution). In order that this physical inspection may be accomplished, RCW 84.40.025 provides that real property is subject to visitation,

6

investigation, examination, discovery, and listing at any reasonable time by the county assessor or the assessor's designated employee.

The Department of Revenue does not interpret RCW 84.40.025 as authorizing assessors to have access to the interior of a property, as the Strands learned during the course of proceedings below. The Board has held, however, and held in this case, that it will decline to consider an owner's claims about a condition or quality of his or her property that only the owner knows about if the owner refuses to allow the assessor to inspect the property prior to an appeal hearing. It explained its reasoning in *Cooney v. Theodore*, No. 55092, 2001 WL 355885, at *13 (Wash. Bd. of Tax Appeals Jan. 25, 2001):

> We recognize that many home owners may very well feel intimidated, even fearful, about allowing the Assessor into their homes, but the Assessor is entitled to a fair hearing of her case as well. One of the major elements of a fair hearing is the opportunity to respond to the arguments and evidence of the other party. "Although court-type discovery is not required in administrative proceedings, fundamental fairness requires that a party be given the opportunity to know what evidence is offered or considered and a chance to rebut such evidence." 2 Am. Jur. 2d, Administrative Law § 327 (1994). Contrary to the view of the Owners, fairness requires us to allow both sides a reasonable opportunity to examine and contest the evidence offered by the other side prior to the hearing. Waiting until after the hearing is equivalent to not allowing an opportunity at all.

The Board's decision in *Theodore* cited to its 1992 decision in *Dare v. Clifton*, No. 41953, 1992 WL 289454, at *4 (Wash. Bd. of Tax Appeals Aug. 28, 1992) in which

7

the Board had similarly refused to accept the owner's arguments concerning the condition of the property because the owner did not cooperate when the assessor attempted to inspect the property after the value estimate was appealed. Thus, whether the property owner refuses to allow an inspection at the time of a regular physical inspection for assessment or in connection with an appeal of the assessor's valuation, the consequence is the same: the Board will not consider evidence from the owner that the assessor was denied an opportunity to independently examine.

The Strands' bare claim that applying the rule is unconstitutional because requesting entry into their home was "unconstitutional (state Sections 2, 3, 7 and federal)," Br. of Appellant at 27, is insufficient to warrant review. *See State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992) ("'naked castings into the constitutional sea'" are not sufficient to command judicial consideration (internal quotation marks omitted) (quoting *In re Rosier*, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986))). The Board's finding on this point is consistent with the statutory requirement that an assessor visit and inspect property to ensure its accurate characterization and with the Washington Constitution's requirement of uniform taxation. CONST. art. 7, § 1. The Board's refusal to consider evidence that one party has been denied an opportunity to independently examine is unsurprising. *Cf.* CR 37(b)(2)(B) (in the context of civil litigation, sanctions for a party's failure to respond

8

to discovery include orders refusing to allow the disobedient party to support its claims or introduce designated matters in evidence).

The Strands cite *Seymour v. Department of Health, Dental Quality Assurance Commission*, 152 Wn. App. 156, 160, 216 P.3d 1039 (2009), but it does not support their challenge to the Board's position on the fairness problem with unilateral, unexaminable evidence. *Seymour* held that a warrantless administrative inspection of the interior of a dentist's office not authorized by statute violated the Fourth Amendment. In this case, there was no warrantless entry into the Strands' home by the assessor, the Board merely disregarded certain evidence on a basis consistent with Board precedent. The Board did not act unconstitutionally.

*II. Alleged Failure To Follow Rule-Making Procedure*

The Strands also argue that in following *Dare* and *Theodore*, the tax referee violated the APA's rule-making requirements. They suggest that the principle on which the Board declined to consider evidence established in those cases, followed in their case, constitutes a "rule." Br. of Appellant at 30.

Adjudicated cases sometimes require agencies to interpret statutes and, in the process, to provide a guide to interpretation and action that the agency can be expected to take in future cases. *See Budget Rent A Car Corp. v. Dep't of Licensing*, 144 Wn.2d 889, 896, 31 P.3d 1174 (2001) (in interpreting how it would apply a statutory measure,

9

department was interpreting a phrase, not making a rule). The Washington Supreme Court has rejected the argument that adjudicated interpretations—while they do guide later decisions—are "rules" that require rule making under the APA, explaining in *Budget*:

> [W]e are not unmindful of the consequences were we to adopt a very broad interpretation of "rule" (in line with Budget's argument), and the fact that it would all but eliminate the ability of agencies to act in any manner during the course of an adjudication. The simplest and most rudimentary interpretation of a statute or regulation would require an agency to go through formal rule-making procedures. While it is true that the APA is designed to provide "greater public and legislative access to administrative decision making," RCW 34.05.001, we believe it is equally true that the APA's provisions were not designed to serve as the straitjacket of administrative action.

*Id.* at 898.

In applying a principle first adopted by the Board in 1992 in *Dare*, the tax referee merely applied board precedent to the evidence and parties before her; she did not promulgate a rule. *Neah Bay Chamber of Commerce v. Department of Fisheries*, 119 Wn.2d 464, 466, 470, 473-74, 832 P.2d 1310 (1992), which is cited by the Strands, determined a standard of review formerly applied to rules (one now superseded by statute) and is inapposite. The Board did not engage in unlawful procedure or decision making.

### III. Allegedly Insufficient Evidence To Support Findings of Fact

We turn, finally, to the Strands' challenges to 15 findings of fact by the Board. As

earlier noted, we review allegations that an agency's order is not supported by substantial evidence by determining whether there is a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order. In doing so, "we view facts and inferences in a light most favorable to the party that prevailed in the highest forum exercising fact-finding authority," in this case, the Spokane County Assessor. *Phoenix Dev., Inc. v. City of Woodinville*, 171 Wn.2d 820, 831, 256 P.3d 1150 (2011). In addition, deference is given to the agency regarding witness credibility and conflicting testimony; we will not weigh the evidence or substitute our judgment on those matters for the Board's.

In reviewing the Strands' assignments of error to the Board's findings, it is evident that the record they have provided is inadequate for review. In certifying the administrative record, the clerk of the Board notified the parties that "[t]he Board did not cause a transcript of the oral testimony adduced at the hearing to be printed. It shall be the obligation of the party wishing a transcript to order the same from the Board and assume the cost of printing same." AR Cover Certificate. The order and decision of the Board clearly indicates that during the course of the formal hearing, both Ms. Strand and Mr. Hollenback testified under oath. Yet no transcript of their testimony has been provided.

It is the appellant's burden to provide the court with all portions of the record necessary to review the issues raised on appeal. RAP 9.2(b). It is possible if not likely

that Mr. Hollenback's testimony provided support for some of the findings that the Strands challenge on appeal. Ms. Strand's testimony could conceivably have provided support as well. We need not speculate. A party who argues that facts found by the fact finder were not supported by evidence must provide a complete record of the evidence on which the fact finder was entitled to rely. Where the appellant fails to provide a verbatim report of proceedings, the findings of fact are all deemed verities and binding on appeal. *Morris v. Woodside*, 101 Wn.2d 812, 815, 682 P.2d 905 (1984).

With the Board's findings all deemed verities, the Strands have not argued that the findings, if all true, fail to support the Board's conclusions of law. They have failed to demonstrate any invalid Board action.

Affirmed.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, C.J.

_____
Brown, J.

12