# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In re the Parentage of:                )
                                       )   DIVISION ONE
L.P.,                                  )
                                       )   No. 73509-8-I
            Minor child.               )
                                       )
TIFFANI PALPONG,                       )   UNPUBLISHED OPINION
                                       )
            Respondent,                )
                                       )
      v.                               )
                                       )
TYLER SOKUNTHOEUN MEAS,                )
                                       )
            Appellant.                 )   FILED:  June 19, 2017
                                       )

2017 JUN 19 AH 9:06

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

DWYER, J. – Tyler Meas appeals from a child support order regarding his son, L.P., as well as the award of attorney fees to L.P.'s mother, Tiffani Palpong. Meas contends that the trial court erred in calculating his monthly net income and in setting his back child support obligation to the date of L.P.'s birth. Because the trial court imposed back child support beyond the period allowed by statute, we remand for further proceedings. In all other respects, we affirm.

I

Meas and Palpong married in 1996 and divorced in 2002. They briefly rekindled their relationship and L.P. was born in 2004. Meas subsequently

remarried and has two younger children. L.P. has resided with Palpong his entire life.

In 2012, Palpong filed a petition to establish paternity and enter a parenting plan and child support order. The parties ultimately reached a settlement on the parenting plan and agreed to a trial by affidavit regarding child support.

Palpong works as an electrician for Boeing and owns a home. Her tax returns for the previous five years reflect an average monthly net income of $4,644.80. For the purposes of this appeal, this figure is undisputed by the parties.

Meas owns and operates his own business, a donut shop. He also owns a home that he purchased in 2003 and a rental property that he purchased in 2008. Meas claimed that his average monthly net income averaged $2,447 over the past five years. However, every month, Meas's personal expenses far exceeded his income.[1] Meas's personal bank statements also showed large and frequent cash deposits and withdrawals from his personal account, including tens of thousands of dollars sent to family members overseas.

On May 8, 2015, the trial court issued a memorandum decision, in the form of a letter to the parties, and an order of child support. The trial court found that Meas had significantly underreported his net income:

---

[1] Bank statements submitted by Meas show that Meas habitually paid for personal family expenses, such as groceries, utilities, and dining out, out of his business account.

2

I chose to impute net income of $7,000 per month for respondent.

It was impossible to accurately determine the respondent's monthly income. He reports less than $3,000 per month, gross, from Tyler's Donuts which he claims is his only source of income. That representation is preposterous. It is a figure which is clearly inadequate to support his standard of living, even if I accept that he has been maintaining a debt equivalent to his original mortgage loan in excess of $200,000. He could not possibly afford to meet monthly car payments of nearly $1,000, the expenses to maintain his household, his travel to Cambodia and the substantial transfer of funds to his parents on his stated income. The fact that his annual tax returns are prepared by a CPA does not authenticate his monthly income. It only authenticates what he has disclosed to his accountant. While he asks that the court accept the truth of his representations, I could not overlook the fact that he consistently failed to provide complete financial records in response to discovery requests. While bank account records were provided, I found no credit card statements, canceled checks or documentation for his claimed business expenses, or documentation for payment of household expenses from some source other than his business account (contrary to his representations). He failed to disclose any rental income on his financial declaration. And . . . respondent offered at best a superficial explanation for all of the financial transfers of funds reflected in his monthly bank account statements. And if his monthly income has only averaged less than $3,000 per month, how could he pay down a mortgage loan by some $20,000 from September of 2012 to July of 2013? And how does he accrue bank balances of $70,000 or $90,000 as reported on his mortgage loan applications on such meager earnings, while remitting funds to his parents on a regular basis?

The payments from his business account coupled with his monthly "draws" from the business begin to provide a more realistic sense of his monthly income. And how am I to account for his own self-reported income from his mortgage loan applications of 2003 and 2008, in which he declares monthly income of $8,646 and $8,425 respectively. Because respondent has so grossly understated his monthly income, it would be easy to impute a substantially greater net income figure to him. I have tried to be fair notwithstanding what I believe to be a deliberate effort to deceive the court.

3

On the basis of Meas's income, the trial court set Meas's total child support obligation at $876.26 per month. Applying the "whole family" formula, the trial court reduced Meas's monthly transfer payment to $572.15.[2]

The trial court also awarded Palpong back child support for the 11 years since the date of L.P.'s birth. The trial court reasoned:

> I could find no legal reason why a child support obligation should not date back to the date of [L.P.]'s birth. It's impossible to accurately compute what that obligation should have been in 2004 or 2005. I have no reason to believe that respondent's monthly income was any less than it is today. There is evidence that petitioner's income was substantially less and has increased annually at least since she was hired on at Boeing. Looking back, it would likely mean that respondent should have been obligated to pay a disproportionately greater share of a somewhat reduced total child support obligation. And the whole family deviation formula which reduces his support obligation for [L.P.] would not have applied prior to the birth of his other children. For those reasons, I simply chose to calculate today's transfer payment obligation back to [L.P.]'s date of birth.

Both Meas and Palpong requested an award of attorney fees. The trial court awarded Palpong $25,000 in fees for Meas's intransigence. Meas appeals.

II

Meas contends that the trial court erred in calculating his back child support obligation to the date of L.P.'s birth because it was beyond the

---

[2] The whole family approach is a discretionary method for calculating deviations that the trial court may use for guidance when parents owe support obligations for more than one household. RCW 26.19.075(e); In re Marriage of Bell, 101 Wn. App. 366, 374, 4 P.3d 849 (2000). Though Palpong does not cross appeal the trial court's decision to grant a deviation, she contends that the trial court did not make adequate findings to support the deviation, as required by RCW 26.19.075(3). Palpong may raise this issue on remand.

period allowed by statute. A trial court "may not order payment for support provided or expenses incurred more than five years prior" to the commencement of the child support action.[3] RCW 26.26.134. Palpong acknowledges that the trial court only had authority to order back child support for five years. Accordingly, we vacate this portion of the child support order and remand for the trial court to recalculate back child support within the statutory limits.

III

Meas argues that the trial court erred in finding that his monthly net income was $7,000 for the purposes of calculating child support.[4] We disagree.

In Washington, child support obligations are calculated according to the statutory support schedule. See RCW 26.19.020. The overriding purpose of the child support schedule is to ensure that children are protected with adequate, equitable, and predictable child support commensurate with the parents' income, resources, and standard of living. RCW 26.19.001. In enacting the schedule, the legislature also intended to

---

[3] An exception exists for "[a]ny period of time in which the responsible party has concealed himself or herself or avoided the jurisdiction of the court." RCW 26.26.134. There is no evidence in the record that this exception applies here.

[4] Although the trial court used the term "impute," it is clear that this was the trial court's shorthand for determining Meas's income based on circumstantial evidence, not as this term is used in RCW 29.19.071(6).

equitably apportion the child support obligation between both parents. RCW 26.19.001.

We review a trial court's findings of fact following a trial by affidavit to determine whether they are supported by substantial evidence. In re Marriage of Shellenberger, 80 Wn. App. 71, 80-81, 906 P.2d 968 (1995). We do not review the trial court's credibility determinations, nor do we weigh conflicting evidence. In re Marriage of Rich, 80 Wn. App. 252, 259, 907 P.2d 1234 (1996). When a party fails to provide credible evidence of income, the trial court may determine income by any rational means based upon evidence in the record. See In re Marriage of Sievers, 78 Wn. App. 287, 305-06, 897 P.2d 388 (1995).

We review a child support order for abuse of discretion. In re Marriage of Bell, 101 Wn. App. 366, 370-71, 4 P.3d 849 (2000). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

Here, the trial court's finding that Meas had understated his income was supported by the record. It is clear that Meas's expenses far exceed his claimed monthly earnings of $2,447. For example, Meas's June 2012 bank statement for his personal account shows that Meas made a monthly

mortgage payment on his home of $2,711.08.[5] As Palpong noted, this alone would exceed Meas's claimed monthly earnings. And Meas's June 2012 bank statement for his business account shows approximately $2,800 in additional personal expenses, including groceries, clothing, utilities, Meas's Lexus payment, and payments made on Meas's personal credit cards.[6] While Meas contended that he was able to maintain this standard of living by drawing on a home equity line of credit, the trial court expressly found that claim not credible. Credibility determinations are not reviewable on appeal. In re Marriage of Rideout, 150 Wn.2d 337, 352, 77 P.3d 1174 (2003).

Moreover, the trial court's determination of Meas's monthly net income was within the range of the evidence presented. For example, bank statements for Meas's personal account show cash deposits totaling approximately $9,419.14 in June 2012 and $10,900 in July 2012. And the trial court found that, in 2008, Meas reported monthly net income of $8,425 on a mortgage loan application, despite the fact that Meas has been in the

---

[5] We use June 2012 as an example because it was the only whole month for which Meas provided statements from both his business and personal accounts.

[6] These calculations are made difficult by the confusing nature of Meas's finances. Some payments made from his business account are clearly personal expenses, such as Meas's Lexus, cell phone, restaurants, and personal credit cards. Some payments are clearly business expenses, such as baking and food supplies. Some payments, such as those for Internet services or to Costco and Fred Meyer, could be either personal or business expenses. In making this calculation, we include expenses that could only be characterized as personal.

7

donut business since 2006.[7] "If a trial court's finding is within the range of the credible evidence, we defer." In re Marriage of Rockwell, 141 Wn. App. 235, 248, 170 P.3d 572 (2007).

## IV

Meas contends that the trial court erred in denying his request for an award of attorney fees. He argues that he was entitled to fees because he was the prevailing party regarding the parenting plan. But "except in the event of an award of attorney fees *against* the State, RCW 26.26.140 does not require that attorney fees be awarded only to a prevailing party." State v. Weston, 66 Wn. App. 140, 148, 831 P.2d 771 (1992).

Meas also challenges the trial court's award of attorney fees for intransigence.[8] He contends there was insufficient evidence to support a finding of intransigence and the court entered inadequate findings to support the award.

A trial court may award reasonable attorney fees if one party's intransigence increased the other party's legal fees. In re Marriage of Burrill, 113 Wn. App. 863, 873, 56 P.3d 993 (2002). The determination of intransigence rests on the specific facts of each case, but may involve "foot-dragging," obstruction, the filing of unnecessary or frivolous motions,

---

[7] Meas does not expressly challenge this finding. It is a verity on appeal. Morris v. Woodside, 101 Wn.2d 812, 815, 682 P.2d 905 (1984).

[8] Meas does not challenge the amount of attorney fees awarded and we do not address it.

a refusal to cooperate with the opposing party, refusal to comply with discovery requests, and any other conduct that makes the proceeding unduly difficult or costly. In re Marriage of Greenlee, 65 Wn. App. 703, 708, 829 P.2d 1120 (1992). We review an award of attorney fees based on intransigence for an abuse of discretion. In re Marriage of Bobbitt, 135 Wn. App. 8, 29-30, 144 P.3d 306 (2006).

Here, the trial court's order provided:

Both parties have incurred substantial attorney fees, and both requested an award for attorney fees. I chose to award petitioner $25,000 in attorney fees, which is reflected in the judgment summary on the first page of the child support order. While both parties have the ability to pay their own attorney fees, and arguably both could afford to also pay the opposing party's fees as well, I intended by this award to address the respondent's intransigence in consistently failing to provide *complete and accurate* financial records which were clearly requested in discovery and in deliberately misrepresenting both his income and contributions toward the support of [L.P.].

The trial court's finding of intransigence is supported by the record. Meas did not provide financial records in response to discovery, requiring Palpong to schedule a discovery conference. And the financial records that Meas ultimately did provide were incomplete. For example, Meas only provided bank statements for his business account from February to December 2012 and July to September 2013. The only full month for which Meas provided a bank statement for his personal account was June 2012. He also provided statements for parts of May, July, August and September 2012 and for parts of April, May, June and July 2013. Meas did

9

not provide any credit card statements or evidence of a credit line, nor did he disclose the amount of rental income he received.

Moreover, the trial court found that Meas misrepresented the amount of child support he had paid. Though Meas contends that he was simply unable to obtain copies of old checks from his bank, the trial court specifically found this claim not credible. Under the circumstances, Meas fails to demonstrate that the trial court abused its discretion in awarding attorney fees for intransigence.

Meas argues that the trial court erred in failing to segregate the fee amounts due to intransigence. When awarding fees for intransigence, the court should segregate the fees caused by the intransigence from those incurred for other reasons. In re Marriage of Crosetto, 82 Wn. App. 545, 565, 918 P.2d 954 (1996). Segregation is not required, however, if intransigence permeates the entire proceedings. Burrill, 113 Wn. App. at 873.

Here, the trial court found that Meas was intransigent for "consistently failing to provide *complete and accurate* financial records." This is equivalent to a finding characterizing Meas's intransigence as pervasive. Moreover, the sole issue addressed in the trial by affidavit was child support. Meas's failure to provide complete and accurate financial records fundamentally affected the trial court's ability to determine his net

10

income. Because Meas's intransigence permeated the entire proceedings, the trial court was not required to segregate the fees.

V

Both parties request attorney fees on appeal. Meas requests fees based on RCW 26.26.140 and Palpong requests fees based on Meas's intransigence during the appeal. We exercise our discretion and decline to award either party attorney fees on appeal.

We remand for the trial court to recalculate the award of back child support. In all other respects, we affirm.

_Dwyer, J._

WE CONCUR:

_Trickey, A.C.J._      _Appelwick, J._